IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JOHN MICHAEL HAMMOND ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. TMD 11-2922 |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND

John Michael Hammond ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 14) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 17). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Plaintiff's Motion for Remand is GRANTED.

I.  Procedural History

Plaintiff protectively filed his applications for DIB and SSI on January 6, 2009 alleging disability since January 2, 2005 on the basis of a spinal cord injury. R. at 13, 155-63, 188. His claims were denied initially and on reconsideration. R. at 80-88, 96-99. On February 24, 2011, a hearing was held before an administrative law judge ("ALJ"). R. at 29-76. In a decision dated

March 15, 2011, the ALJ denied Plaintiff's request for benefits.  R. at 10-28.  The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review.  R. at 1-6.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claims for DIB and SSI using the sequential processes set forth in 20 C.F.R. § 404.1520, § 416.920.  At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since January 2, 2005.  At step two, the ALJ determined that Claimant suffered from the following severe impairments: degenerative disc/joint disease of the spine, and depressive disorder.   At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1.  The ALJ concluded at step four that, given his Residual Functional Capacity ("RFC") Plaintiff was not capable of performing his past relevant work.  At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy.  Accordingly, he concluded that Claimant was not disabled.  R. at 10-28.

## III.  Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. §  405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

### IV. Discussion

Plaintiff argues that the ALJ erred in his (1) step two findings and related assessment of the various medical findings and opinions in the record; (2) evaluation of Listing 12.04; and (3) reliance on the VE testimony

#### Step Two and Treating Physician Rule

Plaintiff argues that the ALJ erred at step two of the sequential evaluation because he failed to find Plaintiff's spinal cord injury as a severe impairment. As mentioned above, the ALJ only found Claimant's degenerative disc/joint disease of the spine, and depressive disorder to constitute severe impairments.

This Court recently discussed the analysis to be undertaken based on an ALJ's failure to characterize a claimant's condition as severe at step two of the disability determination process. *See Fountain v. Astrue*, No. CBD–11–1884, 2013 WL 145873 (D. Md. Jan. 11, 2013). An error of this nature does not always warrant remand, even when erroneous. Step two is a threshold determination of whether claimants have a severe impairment (or combination of

impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520–404.1523 (2011). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. 20 C .F.R. § 404.1520. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of residual functional capacity. *See* 20 C.F.R. § 404.1523; Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986).[1]

When an ALJ erroneously finds an impairment to be non-severe at step two, there is no prejudice to the claimant if the ALJ sufficiently considers the effects of that impairment at subsequent steps. In *Ellis v. Astrue,* the ALJ found that the claimant's hepatitis C was not a severe impairment. No. 10–1020M, 2011 WL 5877215, at *2 (D.Md. Nov.22, 2011). Nonetheless, the ALJ continued to assess whether the claimant met the relevant listing, and whether his hepatitis affected his residual functional capacity. *Id.* Therefore, this Court found that the claimant was not prejudiced and declined to remand the case. *Id.* Similarly, the United States District Court for the District of Columbia has held that an alleged error at step two does not require remand where there is no indication that the allegedly severe impairments would

---

[1] Although not required by statute, the Commissioner publishes the Social Security Rulings which are binding on all components of the Social Security Administration. They represent precedent, final opinions, and statements of policy which the Commissioner has adopted. 20 C.F.R. § 402.35(b)(1) (2011).

4

have met a listing, and where the ALJ properly considered them in evaluating the plaintiff's residual functional capacity ("RFC"). *Hicks v. Astrue,* 718 F.Supp.2d 1, 12–14 (D.D.C. 2010). Other circuits follow this approach as well. *See, e.g., Brescia v. Astrue,* 287 F. App'x 626, 629 (10th Cir. 2008); *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir.2007); *Maziarz v. Sec'y of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987).

However, an error at step two may require reversal and remand where the ALJ improperly discounts or ignores evidence of the allegedly severe impairment at the other steps of the sequential analysis. For this reason, this Court has stated that "[e]rroneous findings at step two usually infect the entire decision, since all of a claimant's impairments must be considered in combination at steps three, four and five." *Schoofield v. Barnhart,* 220 F.Supp.2d 512, 518 (D.Md. 2002). In *Schoofield* the ALJ had failed to credit uncontroverted medical evidence of the plaintiff's irritable bowel syndrome at step two, and then did not consider it in combination with his other severe impairments at the remaining steps. *Id.* at 518, 521. *See also Albert v. Astrue,* No. 10–2071, 2011 WL 3417109 (D.Md. July 29, 2011) (ALJ failed to discuss the claimant's alleged foot impairment at step two or at any subsequent steps); *Boston v. Barnhart,* 332 F.Supp.2d 879, 885 (D.Md.2004) (remanding where the ALJ had failed to mention a plaintiff's obesity at step two or at any other point in the sequential analysis). Therefore, the court must determine whether the ALJ sufficiently considered the allegedly severe impairment, or whether an erroneous conclusion "infected" the other steps. The Court does not find that the ALJ fulfilled his duty of considering Plaintiff's spinal cord injury throughout the sequential evaluation.

5

On July 6, 2001, Plaintiff was involved in a motor vehicle accident in which he suffered a spinal cord injury that paralyzed him from the neck down for about six weeks. R. at 369. He was required to undergo inpatient rehabilitation. R. at 369. While the Commissioner argues that the ALJ considered the residual effects of Claimant's spinal cord injury even if he did not categorize it as a severe impairment, it is not so clear to the Court. This is particularly troublesome in light of Plaintiff's consistent complaints of back pain. While the ALJ did discuss these complaints, the Court cannot determine if the ALJ considered those complaints in light of Plaintiff's spinal cord injury. This is not an individual whose complaints of pain are not documented. Indeed, the record reveals consistent complaints of pain in his arm, hand, leg and lower back with effects in his extremities. R. at 259-62 (March, 2006 complaints of pain and numbness, pain radiating down left arm and down leg; April, 2006 complaints of left side going numb; June, 2006 no improvement of back pain, left sided arm and leg pain, numbness and weakness, unable to lift 2 gallon jug; July, 2006 back pain unrelieved); R. at 309 (November 2008 report of severe pain in lower thoracic region, weakness in left arm and leg); R. at 548 (September, 2009 report of pain worse in six weeks prior); R. at 547 (October, 2009 report of continued pain). The record indisputably evidences that Claimant has been in pain management and undergone various pain medications and also medical procedures including epidural injections, physical therapy and the use of a TENS unit. R. at 312, 318-24, 364, 438, 541, 546.

Closely related to the issue of the ALJ's failure to fully consider Plaintiff's spinal cord injury is his assertion that the ALJ erred in his consideration of the opinions of numerous

treating physicians including Dr. Michael Sullivan.  Under the "treating physician rule" a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record. *See* 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro,* 270 F.3d at 178.

Dr. Sullivan provided a Medical Report in which he opined that Claimant suffered from cervical spondylosis, C4-C5 radiculopathy, lumbar disc disease and L4 radiculopathy.  R. at 251.  Dr. Sullivan based his findings on MRIs performed of Claimant's lumbar and cervical spines.  R. at 255-58.  The cervical spine MRI showed degenerative changes at C3-4 and C4-5 and evidence of myelomalacia (a condition in which there is a softening of the spinal cord), versus a possible demyelinating process in the cervical cord at the C3-4 level. R. at 255.  The MRI of the lumbar spine showed multilevel degenerative changes of the lumbar spine with an appearance suggestive of congenital shortening of the pedicles and marrow signal abnormality of L2-L4.  A review of the ALJ's opinion reveals that he did not even summarize these MRI findings.  For example, there is no mention of myelomalacia from Claimant's prior spinal cord injury, nor did he discuss the similarity between symptoms described by Claimant and those shown to exist in persons with myelomalacia (e .g., numbness, and weakening of the lower

extremities). *See Surratt v. Astrue,* slip op., 2009 WL 5184009, at *5 n. 77 (N.D.Ill.Dec. 21, 2009) (*citing* F.W. Langdon, Myelomalacia *With Especial Reference To Diagnosis and Treatment,* Journal of Nervous and Mental Disease, 32(5): 233 (1994)); *see* R. at 309 (report of Dr. Bakker noting results of MRIs). Dr. Sullivan noted symptoms including neck and arm pain, paresthesias, low back and leg pain and paresthesias and marginal response to muscle relaxants, anti-inflammatory drugs and oral narcotics. R. at 251. He opined that Claimant could never stand, climb, carry, bend, squat, or crawl and that he could only sit, walk and reach for one hour in an eight hour workday. R. at 252. He further opined that he could only lift/carry less than ten pounds frequently. *Id*. Clearly, his findings are more restrictive than those found by the ALJ which were that Claimant maintained the capacity to:

> Perform light work . . . except he requires the option to change position between sitting and standing at will, and is only able to occasionally climb, balance, stoop, kneel, crouch and crawl. He is limited to unskilled routine repetitive tasks with simple work related decisions, few if any work place changes, and without fast paced production requirements.

R. at 18.

The ALJ specifically discussed Dr. Sullivan's diagnoses and noted that Claimant's degenerative joint and disc disease of the thoracic and lumbar spine with complaints of back pain could potentially limit Claimant's ability to stand/walk and sit. R. at 19. [2] However, the ALJ found that the extent of the limitations suggested by Dr. Sullivan were not supported by the medical evidence in the record. Significantly, the ALJ seemingly does not consider any

---

[2] The ALJ also found Dr. Sullivan's finding that Claimant could never stand inconsistent with his finding that he could walk.

possible effects of Claimant's residual spinal cord injury at the juncture.  He cites other evidence he asserts as inconsistent with Dr. Sullivan's findings.  For example, a November, 2008 neurological evaluation noted only mild weakness in the left extremities, a January, 2009 evaluation noting strength in extremities to be equal, and December, 2008 and March 2009 records showing strength normal as well.  R. at 18-20.  While the ALJ cites to the Exhibit numbers in the record to provide support for his findings, [3] the Court finds that those very exhibits provide evidence that contradicts those findings as well.  For example, while the ALJ cites a January, 2009 evaluation (contained within Exhibit 3F)  to show strength in extremities to be normal, he does not discuss Dr. Berman's findings that Claimant's "range of motion did reveal significant limitation in his spinal flexibility with decreased extension, lateral bending, rotation and forward flexion . . .His lateral bending was moderately decreased and his rotation was mildly decreased. . . This was symmetric on the right and left sides.. . ."  R. at 305.  Dr. Berman also noted that the type of pain he was experiencing was probably chronic in nature.  *Id*.  Dr. Berman concluded that Claimant's MRIs showed multilevel degenerative disc disease, neuroforaminal stenosis and facet hypertrophy.  R. at 426.  In addition, in December, 2008, Dr. Konrad Bakker opined Claimant was suffering from a "genuine" neurological disorder and that his problem was due to cervical cord injury which could not be fixed but only the pain addressed.  R. at 307.  He opined that Claimant suffered from neuralgia, neuritis, and radiculitis,

---

[3] Plaintiff takes issue with the fact that the ALJ did not identify the reports of the treating physician by name but rather by Exhibit number or date.  While this alone is not a basis for reversal or remand, the Court notes that by identifying the reports in this manner substantially increased the effort required by the Court in trying to ascertain whether substantial evidence supported his findings.

unspecified in addition to cervical spondylosis with myelopathy. R. at 365. He also indicated Claimant's asymmetry in reflexes was consistent with his spinal cord injury. *Id.*

The ALJ's decision is largely repetitive and does not discuss the detailed findings in the record with sufficient specificity to allow the Court to find that the findings are supported by substantial evidence. The Court cannot find that he fairly considered residual effects from Claimant's spinal cord injury. On remand, the ALJ should begin the analysis at step two considering all of the evidence in the record and stating with specificity his findings citing the evidence which supports those findings. The ALJ shall also state with specificity the reasons for rejecting any evidence found to be inconsistent with his findings.[4]

### V.  Conclusion

Based on the foregoing, Plaintiff's Alternative Motion for Remand is GRANTED. A separate order shall issue.


Date:  March 5, 2013                              _____/s/_____
                                                  THOMAS M. DIGIROLAMO
                                                  United States Magistrate Judge

---

[4] Because the Court remands the issue for consideration beginning at step two of the sequential evaluation, the Court need not address Plaintiff's remaining arguments.